Shawn Morgan, OSB No. 122103
Lead Trial Attorney for Complaining Parties and Class Plaintiffs Percy, et al.
Law Office of Shawn Morgan
6510 SE Foster Rd. Ste. D
Portland Oregon 97206
Telephone:(503) 498-8528
Shawn@morganlawpdx.com
Of counsel to
James M. Kernan, Esq.
Kernan Professional Group, LLP
Office and Post Office Address
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212)986-3196
Facsimile: (212)656-1213
jkernan@kernanllp.com

Attorneys for the Complaining Parties and Class Plaintiffs Percy, et al.

### UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

-----------------------------------------------------------

ALBERT E. PERCY and CARL EVANS
Individually and on behalf of others
Similarly situated,

      Complaining Parties and Class Plaintiffs,

v.

MULTNOMAH COUNTY OREGON; DEBORAH
KAFOURY as Chairman of the Board of Multnomah
County; and JANE DOE and JOHN DOE
being fictitious names representing defendants
whose actual names are not yet known,

                 Defendants.
-----------------------------------------------------------

CASE NO.

CLASS ACTION ALLEGATION
COMPLAINT

DEMAND FOR JURY TRIAL

# COMPLAINT

Albert E. Percy and Carl Evans, individually (the "Complaining Party" herein) and on behalf of others similarly situated (the "Class Plaintiffs") (the Complaining Party and the Class Plaintiffs, collectively, the "Plaintiffs"), by their attorneys above listed, complaining of Multnomah County Oregon, Deborah Kafoury as Chairman of the Board of Multnomah County, and Jane Doe and John Doe, the latter two being fictitious names representing defendants whose actual names are not yet known (the "Defendants" or "Respondents" herein), allege as follows:

## I.    JURISDICTION

1.      The jurisdiction of this court arises under 28 U.S.C. §1343, the Civil Rights Act of 1964, and specifically 42 U.S.C. §2000e-2 and §2000d (the "Act"), and in breach of the conditions to grants of funds from the United States of America ("Federal Funds") and of rights secured by the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§1981, 1983 and 1985.

2.      The jurisdiction of this Court is based on violation of these laws, statutes, executive orders, regulations, rules, agreements and covenants, and which constitutes a dispute within the jurisdiction of this Court pursuant to 28 U.S.C. §§1331, 1337, 1343, and 1361 and 5 U.S.C. §§702 and 706, 28 U.S.C. §§2201, 28 U.S.C. §1331 and its general jurisdiction under Article III of the United States Constitution.

## II.    VENUE

3.      Venue in this District is proper under 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims made herein occurred in and about the Oregon District Courts, Portland Division.

4.      The Class Plaintiffs' residences are presently not yet known.

### III.    PARTIES

5.      The Complaining Party Albert E. Percy, ("Percy") as a member of the Class, has been and is fully capable of learning to perform and/or performing skilled trade work as apprentices and journeypersons, but because of his lack of skills, training and experience, the Complaining Party on behalf of the Class Plaintiffs, has been denied such opportunities, and is a proper representative of the Class. Percy's personal and business interests and the claims hereinafter set forth are fully aligned with those of the Class.

6.      Complaining Party Carl Evans with James Posey, Anthony Jones, Irving Hurdle, Webster Gillory, Walter Fauntroy, Roger Edmunds, Anthony Robinson, and Lynette Barnhardt, (referred to hereinafter as the "Solution(s) Advocates"), comprise a team who have presented solution(s) as an alternative employment practice hereinafter described.

7.      The following Respondents, [Respondents as described in subparagraph (C) as required by 42 U.S.C. § 2000e–2 (k)(1)(A)(ii)], hereinafter also referred to as "Recipients", are organizations who have received grants of Federal Funds: Respondent Multnomah County Oregon, guided by Defendant Deborah Kafoury Chair of the Board of Multnomah County as its CEO, is a political body in the State of Oregon.

  a) JANE DOE and JOHN DOE as names representing defendants whose names are not yet known.

### IV.    BASIS OF LITIGATION - RELIEF REQUESTED

8.      The United States District Court for the Southern District of New York was and is at the time of the institution of Percy v Brennan Case No. 73-CV-4279, reported at 384 F.Supp. 800, a court having general jurisdiction and personal service of process was made on defendants

CLASS ACTION ALLEGATION COMPLAINT Page | 3

therein, The cause came on and a memorandum, order and judgment ("Order") by Judge Lasker was entered on November 8, 1974 at Docket Filed as #41415 in favor of Percy, a Complaining Party herein, for determination of the class with regard to public construction sites which receive federal or state assistance. The Class was defined and certified by Judge Lasker in the Order as "all black and Spanish-surnamed persons who are capable of performing, or capable of learning to perform, construction work, and who wish to perform construction . . . .". The standing certified in Percy v. Brennan, supra, was in a lawsuit seeking training to develop skills for equal employment opportunity. Recognition and enforcement of the Order of Judge Lasker certifying the Class is prayed for in this Complaint. A properly authenticated copy of the Order is being filed concurrently in this case, Case Docket is attached hereto as Exhibit 1.

9.      This action is brought as a Class action by the Complaining Parties, on their own behalf, and on behalf of similarly situated persons, the Class Plaintiffs, under the provisions of Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

10.      Plaintiffs allege that Respondents, together with other various local and state government agencies and authorities, and federal government agencies, have violated and continue to violate statutory and common laws the 28 U.S.C. §1343, Civil Rights Act of 1964, and specifically the 1991 amendment 42 U.S.C. §2000e-2 and §2000d and in breach of the conditions to grants of funds from the United States of America ("Federal Funds") and of rights secured by the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§1981, 1983 and 1985, and have failed to implement regulations and executive orders which guarantee the right to equal employment opportunities under the Civil Rights Act of 1964 and as amended in 1991 by failing to adopt and/or otherwise implement an alternative employment practice ("Alternative Employment Practice") and  in not properly utilizing the Federal Funds to

legally and effectively provide equal employment opportunity in paid on-the-job-apprentice training ("OJT") and employment.

11.    The elements of a prima facie cause of action for violation of 42 U.S.C. §§2000e et al exists, depriving rights thereunder, secured to the Plaintiff Class as the Complaining Party by the 5th and 14th Amendments to the United States Constitution, 42 U.S.C. §§§ 1981, 1983, 1985, and United States Executive Order 11246.

12.    Members of the Class, who are fully capable of learning to perform and/or performing skilled trade work as apprentices and journeypersons, but because of their lack of skills and experience, the Class Plaintiffs, have been denied such opportunities.

13.    Beginning with the Congressional legislation and appropriation of Federal Funds to federal agencies, then by executive orders and memoranda circulars issuing guidance for implementing the legislation to the grant-making federal agencies developing the administrative policies, based on guidance issued by the executive orders, these statutes, orders, and regulations were designed to remedy this disparate impact.

14.    Discriminatory intent is established by and through substantial disparate impact. Disparate impact is evident, with a reasonable degree of statistical certainty, in the neighborhoods which grapple with multiple dimensions of disadvantage and bear the greatest disproportionate burden of criminal justice intervention. Majority- minority neighborhoods experience the highest rates of unemployment and disproportionate distribution exists surrounding the Sellwood Bridge Replacement Project in Multnomah County, Portland, Oregon, as evident by measures of economic, social and educational disadvantage. The cycle of incarceration, community reentry, and reincarceration take a heavy toll on the stability of those neighborhoods and further entrench their social and economic isolation measured by

unemployment, poverty, public assistance, low income, no high school degree, and prison admissions. All told, the same Class continues to experience multiple, overlapping conditions of distress in entrenched neighborhood pockets resistant to superficial reform efforts, which fail to combine ongoing training, support services, and a credible pathway to employment. Conditions of concentrated disadvantage simultaneously experienced on so many dimensions make it highly unlikely that residents in these neighborhoods will be able to rise out of these circumstances and achieve gainful employment without concerted strategies to recruit, train and support an ongoing program of paid on-the-job training and education.

15.     Disparate impact is evident by statistical evidence of unequal employment opportunity, defined as disproportionate disadvantage in educational attainment, employment, poverty, dependence on public assistance, and involvement in the criminal justice system. The claim is that there is an identifiable Class who have not been given equal employment opportunity on the Multnomah facilities that are within commuting distance, identified as the Complaining Party to be the labor pool within reasonable commuting distance to the Sellwood Bridge Replacement Project.

16.     The Class as the "Complaining Party" has "demonstrated" an "alternative employment practice" (referred to in this ligation as the "Alternative Employment Practice") to alleviate disparate impact, which the "Respondents refuse(s) to adopt", warranting the Court provide relief to the Complaining Party by and in accordance with the Civil Rights Act of 1964 (42 U.S.C. §§2000e et al, commonly referred to as PL Title VII of the Civil Rights Act of 1964 as amended in 1991). The Alternative Employment Practice is under the Fitzgerald Act of 1937 (29 U.S.C. §50 commonly known and referenced here as the "National Apprenticeship Act of 1937", section 1 (29 U.S.C. 50), and therefore satisfies the requirement that the Alternative

Employment Practice be in accordance with law as it existed on June 4, 1989 as set forth at 42 U.S.C. § 2000e-2 (k)(1)(C).

17.     In misusing Federal Fund grants the evidence will show that the Respondent Recipients have inserted provisions in construction contracts for the building of public works facilities requiring contractors to adopt affirmative action to make available equal employment opportunity by simply passing those obligations through to contractors mandated by goals and quotas, in violation of United States Executive Order 11246 ("Executive Order 11246"), specifically identified in the grants of Federal Funding to the "Recipient" under 2 CFR §200.69, of federal assistance under federal grant agreements. The Government agencies agreed that they have ultimate responsibility for full compliance with the federal requirements related to "itself, its Award, the accompanying Underlying Agreement, and any Amendments thereto" and that it will extend those federal requirements to any third-party recipient.

18.     Grant Recipients easily could have adopted the Alternative Employment Practice by sponsoring apprenticeship under the National Apprenticeship Act of 1937, section 1 (29 U.S.C. 50) under U.S. Department of Labor's Bureau of Apprenticeship and Training (BAT) and C.F.R.T. 29, Subt. A, Pt. 29 and Pt. 30.

19.     The Class Plaintiffs so represented by Complaining Parties in this action, and of which they are themselves members, consists of individuals who have been disenfranchised and denied entry into OJT and employment on facilities and projects being constructed by the Respondents in Multnomah County, Oregon as well as nationally as found in Percy v. Brennan. 73 Civ. 4279, 384 F. Supp. 800 (1974),

20.     On behalf of themselves and Class Plaintiffs, Complaining Parties are seeking declaratory and injunctive relief to prevent Respondents and other local officials or agencies and

authorities not yet identified, from denying Plaintiffs their rights to become adequately trained
and skilled through paid on-the-job-apprentice training ("OJT") and employment in connection
with public works construction contracts so as to be able to compete fairly for jobs based on
ability rather than ethnicity or other discriminatory basis. Specifically, Complaining Parties seek:

a) a judgment declaring that the acts and/or omissions of the Respondents are in
violation of the Plaintiffs' rights to equal training and employment opportunities,
an order enjoining the Respondents from further violation of Plaintiffs' rights, an
order in the nature of a mandamus commanding Respondents to provide an
accounting of their acts, an order directing Respondents to forthwith cure any
breach of agreements, conditions, covenants and obligations as asserted in this
Class Action Complaint and to mitigate any further ongoing damage to Plaintiffs
and waste of Federal Funds by taking immediate remedial action to correct
Respondents' past wrongful conduct (as more particularly described herein
below) by implementing the Alternative Employment Practice corrective policies
and procedures, conditions, covenants and obligations (all as more particularly
asserted in this Class Action Complaint).

b) an order enjoining any further payment of Federal Funds under grants to
Respondents until such time as this Court has directed, based upon the Court's
determination that Respondents have reasonably cured the breach of agreements,
conditions, covenants and obligations as asserted in this Class Action Complaint
and have mitigated the ongoing damage to the  Plaintiffs and the waste of Federal
Funds by taking remedial action to correct Respondents' past wrongful conduct as
more particularly described herein below by having implemented the Alternative

Employment Practice demonstrated by the Complaining Party using its equitable powers to fashion this Alternative Employment Practice which truly provides affirmative action to the Class which has been denied rights to equal opportunity, and such other corrective policies and procedures, conditions, covenants and obligations as asserted in this Class Action Complaint so as to prevent the Respondents and officials of the Respondents from:

   (i)    further wasting Federal Funds; and

   (ii)    denying the Plaintiffs their respective rights in connection with public works contracts as a consequence of Respondents' continued failure to abide by agreements, covenants, statutes, regulations, executive orders and other federally approved provisions guaranteeing the right to such equal employment,

c)   an order commanding Respondents to provide an accounting which discloses information and evidence as to the employment of the disenfranchised and alienated Plaintiffs, and

d)   such other and further relief as to the Court may seem just and proper under the circumstances.

## V.    FACTS

21.    Statistical evidence clearly demonstrates that social and economic disadvantage has continued to grow worse in disadvantaged communities such as the defined Class as well as across the country since the enactment of Civil Rights Act of 1964, and as amended in 1991, and President Lyndon Johnson's Executive Order 11246 in 1965. Legal initiatives as implemented in

practice have failed to produce a reduction in disadvantage as measured by employment and unemployment rates for the Class.

22.    Disparate impact evidence was generated using the U.S. Census Bureau and Justice Mapping Systems census tract adult population data in 2010 and 2015, incorporating travel time estimates by identifying population center points, and Google Maps was used to determine public transportation time from each of those center points to the Sellwood Bridge worksite, and then this was compared by Justice Mapping Systems to prison admissions data.

23.    Statistics were generated from:

a)    Data from U.S. Census Bureau census tracts percent minority (African American or Spanish surname),

b)    Data from U.S. Census Bureau census tracts percent in poverty, percent on public assistance, percent no H.S. diploma, and percent low income in 2014,

c)    Data from Department of Corrections, home street addresses of people admitted to prison and adult population census tract data by percent of total prison admission and adult population data were used to depict relative proportion of total populations, the cumulative percent of prison admissions reaching 50% were identified and compared to associated cumulative percent minority (African American or Spanish surname) of adult population.

24.    Specifically, in 1954, 9.9 percent of African-Americans were unemployed. By 2013 that had increased to 13.4 percent (Bureau of Labor Statistics from Pew Research Center). The failure is further evident by research which examines low levels of employment and shows high levels of unemployment as well as persons who have dropped out of the workforce and are

not counted in the unemployment statistics, high levels of incarceration and poverty and low levels of education for the Class.

25.     While the black unemployment rate in 2013 was 13.4%, the white unemployment rate was half that, 6.7%, a 2-to-1 gap, which has persisted more or less over the last 60 years (Bureau of Labor Statistics from Pew Research Center). According to the Pew Research Center, ". . . labor economists, sociologists and other researchers have offered many explanations for the persistent 2-to-1 gap . . . from differing industrial distribution of blacks and whites to a 'skills gap' between them . . ." The disproportionate disadvantage in educational attainment and employment presented in the Class data are consistent with the presumption of a skills gap. Additional conditions of disadvantage such as poverty, dependence on public assistance, and criminal justice system involvement in the Class suggest that without persistent, concerted, and targeted intervention in the education, skills development, training and employment of these residents, these debilitating conditions are unlikely to be relieved and the vision of the Act is unlikely to be fulfilled.

26.     The 1991 amendment to the Civil Rights Act of 1964 (42 U.S.C. §§2000e et al, commonly referred to as PL Title VII of the Civil Rights Act of 1964 as amended in 1991) sets forth a methodology whereby the Plaintiff Class as the Complaining Party can demonstrate to Respondents an Alternative Employment Practice to address the disparate impact of the lack of skills caused by inadequate training of persons in the Plaintiff Class so as to have equal employment opportunity by possessing the necessary skills to compete for jobs.

27.     The Class Plaintiffs, as the Complaining Party under 42 U.S.C. § 2000e–2(k)(1)(A)(ii), have made the requisite demonstration to the Respondent [Respondents as described in subparagraph (C) as required by 42 U.S.C. § 2000e–2 (k)(1)(A)(ii)], in that they

have failed to implement training, thereby causing unfair employment practices and disparate impact.

28.     The Alternative Employment Practice and its demonstration, reference subparagraph (A)(ii), is in accordance with the law as it existed on June 4, 1989 as required by 42 U.S.C. § 2000e–2(k)(1)(C), being the National Apprenticeship Act of 1937, section 1 (29 U.S.C. 50).

29.     Respondents refused to adopt the Alternative Employment Practice and therefore, under 42 U.S.C. § 2000e–2(k)(1)(A)(ii), warrants this action to this Court to provide relief to the Complaining Party Plaintiff Class.

30.     The relief is the "Solution", the Alternative Employment Practice described here, and is the subject of this Complaint.

31.     On and about March 14, 2012 the Solution Advocates submitted and demonstrated a Proposal in response to a Request for Proposals of February 17, 2012 from Respondent Multnomah County Oregon for Owner Controlled Insurance Program ("OCIP") Broker Administrative and Consultative Services for the Sellwood Bridge Replacement Project which included a demonstration of the Alternative Employment Practice.

32.     The Solution Advocates also demonstrated the Alternative Employment Practice on or about March 31, 2011 as Veterans Human Capacity Workforce Investment to the Executive Branch Office of the President of the United States to Rahm Emanuel when he was Chief of Staff for President Barack Obama, and to Eric Holder when he was the United States Attorney General, and to Hilda L. Solis when she was the United States Secretary of Labor, and to other Secretaries of Federal Government Agencies. Like the local and state Government Agencies to whom Federal Funds were granted to construct the Sellwood Bridge Replacement,

the federal entities have as well refused to adopt the Alternative Employment Practice, despite the ability of the Alternative Employment Practice. A separate lawsuit is being commenced against the Federal Government Agencies in the District of Columbia,.

33.    The Solution Advocates also demonstrated to the grantee government agencies that the need for the Class to obtain competitive skills is by utilizing registered apprenticeship training.  In *Evans v. State of NY, et al.,* 1:15-cv-03942 (E.D.N.Y.) (filed 12/15/2016), the Solution Advocates sought an inquiry into the Port Authority of New York and New Jersey's failure to adopt the Alternative Employment Practice which develops skills and safety to enable all persons the opportunity to compete for jobs in and about the City of New York. The Alternative Employment Practice takes advantage of the one common denominator that all employment on federally funded projects require, that is workers' compensation insurance coverage, and that often can be provided by government agencies through an owner-controlled insurance program ("OCIP") as this Alternative Employment Practice, and so the inquiry was expanded to state and local agencies in and about the City of New York.

34.    In the 1973 landmark Class action lawsuit, *Percy v. Brennan*, supra, Percy, also a Complaining Party in this lawsuit, won the right for unskilled workers to receive training so they may benefit from good jobs while enjoying the pride that comes from building and maintaining critical infrastructure. Despite a favorable ruling, the training never materialized and today the United States of America faces a shortage of skilled labor. If the training promised 42 years ago had occurred, people who need jobs today would have rewarding and good paying jobs. Percy was hoping to train these new workers. Such training would have included on-the-job training while working alongside an experienced craft person who is able and willing to transfer their know-how to inexperienced, although enthusiastic, apprentices so that apprentice learns by doing

CLASS ACTION ALLEGATION COMPLAINT Page | 13

the tasks of the craft (practical, paid experience) and by learning the related technical knowledge in a classroom.

35.    The 1964 Civil Rights Act 42 U.S.C. §2000(e) and §2000(d) (1964) is a material condition of government contracts which are incorporated into the master and grant agreements, whereby Federal Funds are awarded to Recipients such as Respondent Multnomah County Oregon, just as important as providing steel for a bridge. The purpose of this litigation is <u>not</u> to attempt to outlaw goals or quotas, which in and of themselves are illegal, but instead to enforce the provisions of the Act for the benefit of the Class.

36.    On June 1, 2016, a Subpoena was issued in *Evans v. State of NY*, et al, supra, for the United States Department of Transportation to Produce Documents (the "Subpoena"), by the U.S. District Court for the Eastern District of New York (the "Issuing Court"), was duly served upon Anthony Foxx as the Secretary of the USDOT commanding the USDOT to produce certain documents. In obtaining master and grant agreements, it was discovered that they followed the same pattern and had the same standard clauses in use with all Federal Funding.

37.    In the *Evans v. State of NY*, et al, supra, discovery of the United States of America has shown that the United States office of the President and his Secretaries and of their subsidiaries and/or delegated entities have entered into master and grant  agreements to provide funding for facilities at the World Trade Center (WTC), Permanent PATH Terminal, PATH Harrison Station, LaGuardia Airport Central Terminal Building and 13R-31L JFK Runway, and discloses that the common source for all Federal Funding is through standard grant and master agreements. This funding originates from United States Congressional appropriations by and through public laws. The Congress of the United States of America authorized the United States of America to appropriate funds as the source of monies for infrastructure improvement of

Facilities utilized by the Presidential Office of Management & Budget in the management of the budget for the United States of America, causing money to be allocated to the Federal Agencies who then enter into master and grant agreements with Recipients.

38.    At a minimum and specific to this litigation, every master and grant agreement includes provisions providing protection under the Act, specifically, selection for training, including apprenticeship, and upgrading.

39.    Further, the master and grant agreements provide that "when undertaking "construction" as recognized by the U.S. Department of Labor (U.S. DOL), with: (a) U.S. DOL regulations, "Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor," 41 C.F.R. chapter 60, and Executive Order No. 11246, "Equal Employment Opportunity in Federal Employment," September 24, 1965, 42 U.S.C. § 2000e note, as amended by any later Executive Order that amends or supersedes it, referenced in 42 U.S.C. § 2000e".

40.    The Alternative Employment Practice is ideally suited to train and create jobs for the Class as the Alternative Employment Practice is an outgrowth of a commitment to minimize loss and risk in the work place by educating and training apprentices and journey persons on safe and healthful practices, worker's safety is impacted in a positive manner resulting in greater control of risk and reducing losses.

41.    Equal opportunity at its core carries the simple mandate that opportunities should be open to all on the basis of competence alone. The complaint is that the Complaining Party lacks the minimum training, skills and preparation needed to be eligible for the jobs that become available, and those who do secure work as a result of affirmative action mandates are often unable to keep their jobs and the dignity of work. Fifty years have passed since President Lyndon

Johnson declared that equality has to be actual equality, not equality in name, when he said:

*"You do not take a man who, for years, has been hobbled by chains, liberate him, bring him to the starting line of a race, saying you are free to compete with all the others, and still justly believe you have been completely fair."*[1]

42.    Further exasperating the inequity, automation and new technology are combining to raise the level of unemployment and promise to result in less and less opportunity for the untrained lower or nonskilled Class, of which it turns out nonwhites make up a disproportionate share.

43.    The Alternative Employment Practice answers the need for the Complaining Party to obtain competitive skills by utilizing registered apprenticeship training meeting the requirements of the National Apprenticeship Act under U.S. Department of Labor's Office of Apprenticeship and Training (BAT) and 29 C.F.R, Subt. A, Pt. 29 and Pt. 30. Apprenticeship is the process of learning a skilled occupation through both on-the-job training (practical, paid experience) and learning the related technical knowledge in a Classroom. Candidates must be 18 years old, and possess a GED (the Alternative Employment Practice will help a candidate obtain a GED). Enrollment must be done openly under the procedures established by federal and state regulations for Minimum Qualifications Review and Eligibility List Ranking under the National Apprenticeship Act of 1937 using educational achievement, work experience, seniority, job aptitude, oral interview, and general demographic inquiries to determine a score for ranking for eligibility to be enrolled in OJT and continuing education.

44.    The Alternative Employment Practice will develop the skills of the Class of persons recruited from within communities mired in poverty, to enable such persons to compete

---

[1] Howard University speech by Lyndon Johnson on affirmative action, 1965, shortly after his Executive Order 11246.

for paid OJT with related Classroom instruction and continuing education provided as part of risk management, loss control and safety training within the OCIP for workers compensation insurance.

45.    The key to this OCIP based Alternative Employment Practice is having broad work processes available for meaningful long-term opportunities for all aspects of skilled construction craftsmanship available on large multi-disciplined public contracted projects.

46.    Providing the training using OCIPs as proposed by the Alternative Employment Practice and enrolling the new workforce to work alongside existing journey persons will grow the depth of skilled workers whose ranks are being diminished through age and attrition. Disadvantaged persons are given an opportunity and employers build a reliable workforce to complete contracts competently and profitably.

47.    The Alternative Employment Practice as part of an OCIP enable the unskilled to enter the workforce at a level of skill and training which will permit them to move towards journeyman status.

48.    On many facilities and projects of Respondent Recipients, OCIPs are part of the Contract and is a suitable mechanism within which to fit OJT apprentice training so as to foster equal employment opportunity. The Respondent Recipients have been ambivalent regarding establishing a solution which actually provides jobs and careers to the Class.

49.    Written assessment and performance verification within an OCIP will implement career pathways created and endorsed by both industry and education, suitable for service members with construction training and/or experience who are interested in taking the assessments.

50.    There is no need for subsidies to support the Alternative Employment Practice, it will pay for itself by savings generated by the OCIPs management of safety and commitment to technology education, on-the-job training, entrepreneurialism, risk management and loss control while rewarding the value of hard work.

51.    The OCIP is the framework to provide a private solution to a very public problem. For all of the Federal Funds poured into public work projects and facilities over these past forty-two years since the decision of Judge Lasker in *Percy v. Brennan*, supra, there has been virtually no meaningful training, enabling the equal employment opportunity as envisioned by the United States Congress and Pres. Lyndon Johnson upon the signing of the Civil Rights Act of 1964 and the adoption of the Presidential Executive Order 11246.

52.    Quotas are being used for equal employment opportunity apparently due to the mistaken view by the Respondents that there is no less onerous alternative for achieving the purpose, allowing unequal treatment based upon the color of skin or ethnicity under the guise of equalizing employment opportunity, when in fact there is a more beneficial and constitutional solution available. Although this Complaint asserts that not only are equal employment goals or quotas illegal, they are disparaging, corrupting and evil, propagating fraud and criminal activity, nevertheless this is not within this action.

53.    Community Benefits Agreements (CBAs) and Project Labor Agreements (PLAs), which were expected to generate jobs to disadvantaged persons and spark economic development, were touted to ensure distressed communities as well as the facility owners would benefit from federally funded projects. CBAs and PLAs promised, among other things, that jobs would be set aside for minorities and women and that at least 20% of the money spent on construction would go to minority firms to level the playing field for companies owned by

veterans, women, and other minorities, have not had the success envisioned. The CBAs and PLAs have been a dismal disappointment.

54.    The Respondents must sustain a very heavy burden of justification to show that the Alternative Employment Practice is not a less onerous alternative for achieving equality than what has been done for equal employment opportunity.

55.    All Respondent Recipients involved in the chain of funding, beginning with Federal congressional appropriation, to the Executive Office of Budget & Management allocation, to the Executive Cabinet Agencies, grantor government agencies who distribute the funds, to the local, state and federal agencies and authorities, Recipients, who enter into grant and master agreements to receive Federal Funds, and then contract with contractors who build and are paid from the grant of Federal Funds, all are stewards of the Federal Funds and must live up to the intent of the Act – to be colorblind.

56.    Executive Order 12250 was issued for the primary purpose of establishing "consistent and effective implementation of various laws prohibiting discriminatory practices in Federal programs and programs receiving Federal financial assistance".  The responsibility was first delegated to the US Attorney General and later redelegated to the Assistant Attorney General Civil Rights Division. The Federal Coordination and Compliance Section ("Section") is tasked with carrying out the responsibility "on a day to day basis". Under Executive Order 12250, the Section coordinates the enforcement by Federal agencies of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) and "Any other provision of Federal statutory law which provides, in whole or in part, that no person in the United States shall, on the ground of race, color, national origin, handicap, religion, or sex, be excluded from participation in, be

denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance".

57.     In calling for enactment of the Civil Rights Act, President John F. Kennedy identified "simple justice" as the justification for Title VI: *"Direct discrimination by Federal, State, or local governments is prohibited by the Constitution. But indirect discrimination, through the use of Federal Funds, is just as invidious."* The shifting and passing the burden to comply with the Act to the contractors building facilities by requiring goals as affirmative action, has simply spawned fraud and criminal activity.  Unfortunately, using goals, the contractor is irresistibly drawn to look to the race or national origin of individual applicants, and such race or national origin proves to be the decisive factor in deciding whether or not to hire an individual. Racial considerations are specifically outlawed by the Act dealing with individual discrimination because of race, and preferential treatment of individuals or groups of individuals. The Act requires each individual to be treated without regard to race or national origin as a determinative factor in the decision to hire workers.  The Act prohibits such goals which are no more than quotas. In order to meet quotas an employer has to hire a black or brown man rather than a white man even though their job "credentials" are not as impressive, whereas upgrading those credentials allows the disadvantaged person to compete based upon skill rather than the color of their skin or ethnicity, 42 U.S.C. §§ 2000(e)-2(a) makes such conduct unlawful.

58.     The Respondents were not named in the *Percy v. Brennan* case, supra, but they in fact are the only parties in a position to provide real affirmative action. The Alternative Employment Practice can be funded by private money generated from OCIP insurance programs and loss control and safety training without costing Respondents or diverting any of the funding for its projects. This is accomplished by simply reallocating savings resulting from reducing

losses and allocating those savings to training. The Alternative Employment Practice can be incorporated in owner controlled insurance programs ("OCIPs") which the Respondents currently utilize. This can be implemented through project labor agreements where necessary.

59.     The Solution Advocates explained that the Solution is an outgrowth of a commitment to minimizing loss and risk in the work place by instruction of apprentices and journey persons on safe and healthful practices, worker's safety is impacted in a positive manner resulting in greater control of risk reducing loss for employers and their carriers.

60.     The Solution Advocates explained the transformational changes taking place in every industry, tradespersons are requested to keep abreast of technological developments, regardless of age or position in an organization – this has never been more important and represents a powerful key to unlock equal employment. This is an opportunity to give the Class the skills to compete and make them desirable to hire based upon their capabilities rather than the color of their skin or ethnicity. This is not accomplished by the swipe of a pen or a provision in a contract. Instead it will take time to infuse the skill and training to give naturally intelligent and industrious persons wanting to improve their lives and move out of poverty into the middle Class the opportunity. Yet the government agencies have spent over 42 years attempting to enforce goals and quotas which have miserably failed, and well they should fail because the goals and quotas flow from a forced interpretation of the vision of the Act and the 14th Amendment to the US Constitution - equal protection. The goals and quotas are just plain contrary to law and it is obvious that the illegal activity has caused very little good.

61.     The Solution Advocates demonstrated and explained that there is a significant difference between OJT and education or training. In order to succeed in today's world of nearly

instantaneous and constant technological change, it is important to have both, and to ensure that the Class receives the best training and education.

62.     The Solution Advocates demonstrated and explained that OJT is distinguished from education. OJT teaches and education provides tools to continually adapt to changes. An ancient truism says that if you give a man a fish, you feed him for a day, and if you teach a man to fish, you feed him for life. We go a step further: don't just teach him how to catch a fish, educate him about the art and science of fishing. Go beyond the mechanics of catching a fish and enlighten him by explaining the biological forces underlying the key elements of fishing. Give him the big picture. Teach him the reasons behind the design of the equipment. Teach him about water currents, patterns in fish mating and feeding cycles, including economic and environmental trends that impact the life-cycles of fish.

63.     The Solution Advocates demonstrated and explained that this clichéd old saw about the fisherman illustrates the divide between training on-the-job (OJT) and education. OJT is skill-oriented: It's learning how to fish. Education is concept-based — it's learning to see the big picture of why and how things work together. Both are necessary but without OJT the Class never gains the experience to get a job and cannot get a job due to lack of experience.

64.     The Solution Advocates demonstrated and explained that training someone to do something is task-oriented. It is skill-based. You can train someone to increase their proficiency. A trained person is faster, better able to perform tasks competently and safely. OJT has a skill-based focus. You train people for performance. You educate people for understanding. OJT takes full advantage of the new tools and systems coming onto the market by manufacturers.

65.     The Solution Advocates demonstrated and explained that OJT is the not only less onerous alternative, it is the most beneficial and constitutionally acceptable, and is just good business.

66.     Recipients, as the sponsor and grant recipient under master agreements and grant agreements with the United States of America, have accepted Federal Funding pursuant to the terms and conditions of the grant and must certify that it will legally, financially, and otherwise be able to assume and carry out the certifications, representations, warranties, assurances, covenants and other obligations required by the grants which require the Respondents to employ these funds to accomplish equal employment opportunity for the economic benefit of the Class.

67.     As a result of the Respondents' failure to adopt the Alternative Employment Practice or to otherwise comply with the terms of grants and master agreements, the employment rate of the Class is still significantly lower than that of other demographic groups. By coincidence, the black population make up a majority of the Class but this litigation does not offer that race designation in support of this action, in fact it is abhorrent to the constitutional principles upon which this action is based.

68.     Despite federal funding being poured into Recipients for decades, large clusters of us, the members of the Class of unemployed, unskilled, poor and disenfranchised communities, are surrounded by the very public works projects for whom the federal funding was intended to assist.

69.     These grants require Recipients to comply with all federal laws, regulations, executive orders, policies, guidelines, and requirements applicable to the acceptance and use of federal funding including but not limited to: the Act, Executive Order 11246, 49 CFR Part 21-Discrimination in Federally-assisted Programs and Effectuation of the Act.

70. Recipients are required to provide specific assurances which were included in the grant and master agreements, including but not limited to facilities identified such as the Sellwood Bridge in Portland Oregon.

71. The Respondent Recipients have failed to provide a mechanism which enables disenfranchised persons to gain experience on-the-job and join the gainfully employed workforce.

72. The Respondents have conspired, obfuscated, shirked and simply delegated the responsibility for the enforcement of these regulations, which protect the Class.

73. The Respondents' negligent, capricious, conspiratorial and prejudicial actions in depriving the Plaintiff Class the equal opportunity has been covered up by acquiescing, sanctioning and inducing the use of some minority business enterprise contractors only as fronts in order to appear to satisfy the legal requirements of hiring the identified minority and disadvantaged and thus fail to place the Class on a level playing field and deprive Class of vast numbers of real employment and business opportunities.

## VI.    THE CLASS ACTION

74. Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, this action satisfies the requirements to proceed as a Class action, as follows:

a) The Class numbers in the thousands as a Class who stand ready to go to work. It is therefore so numerous that joinder of all members is impracticable.

b) Class member claims are typical of the Class, in that each individual has been unfairly and historically discriminated against and denied training and participation in Recipients' projects based upon the Respondents' actions as described herein. The questions of law and fact are common to the Class regarding the Act, Executive Order

11246, 49 CFR 18.36/2 CFR 200.321, and 49 CFR 21, 23, and 26, the United States Constitution, and the several federal regulations discussed herein are being violated against the Class. The Respondents have acted and refused to act on grounds generally applicable to the intended Class, thereby making injunctive and declaratory relief appropriate with respect to us as a Class as a whole.

c) The Individual Plaintiff Percy, supra, will fairly and adequately protect the interests of the members of the Class. Percy has no conflict of interest with the members of the Class.

75.     The Class was defined by Judge Lasker in the Order in *Percy v. Brennan*, supra, as "all black and Spanish-surnamed persons who are capable of performing, or capable of learning to perform, construction work, and who wish to perform construction . . . .". The standing was certified in a lawsuit seeking training to develop skills for equal employment opportunity, the same Class and the same relief continues to be prayed for in this Complaint.

## VII.    COMMON QUESTIONS OF LAW AND FACT

76.     There are common questions of law and fact in the action that relate to and affect the rights of each member of the Class and the relief sought is common to the entire Class, namely, the alleged misconduct by Respondents regarding lack of training on public-works construction in Portland, extending to other demographic areas of the Class, by obtaining and/or distributing Federal Funds with no oversight on the recipients compliance with requirements of the 1964 Civil Rights Act 42 U.S.C. §2000(e) and §2000(d), Presidential Executive Order 11246, the National Apprenticeship Act of 1937, and other violations of the rights afforded to the Class.

## VIII.    TYPICALITY OF CLAIMS

77.    The claims of Complaining Parties, who are representatives of the Class herein, are typical of the claims of the Class, giving rise to the right of Plaintiffs to the relief sought herein.

## IX.    NO CONFLICT BETWEEN INDIVIDUAL PLAINTIFFS AND CLASS PLAINTIFFS

78.    There is no conflict as between any named Individual Plaintiff and other Class Plaintiffs with respect to this action, or with respect to the claims for relief herein set forth.

## X.    INDIVIDUAL PLAINTIFFS WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS PLAINTIFFS

79.    The named Complaining Parties are the representative parties for the Class Plaintiffs and are able to, and will fairly and adequately protect the interests of the Class.

## XI.    EXPERIENCED AND CAPABLE ATTORNEYS TO REPRESENT PLAINTIFFS

80.    The Plaintiff Class is represented by a competent legal team experienced in Class action civil rights litigation and is working with the Minority Business Enterprise Legal Defense & Education Fund ("MBELDEF"), an organization that seeks to protect the civil rights of disadvantaged persons, including the right to equal employment opportunity.

## XII.    JUDICIAL ECONOMY

81.    This action avoids the prosecution of separate actions by multiplicity of actions involving the same individual members of the Class and the same government agencies which would create a likelihood of inconsistent or varying adjudications with respect to individual members of the Plaintiff Class.

82.     The Respondents, individually and collectively, alone and in concert with other still unidentified parties, cloaking themselves under the color of law, utilized and are still utilizing all the power of their government offices, in capricious and conspiratorial disregard to deny and to inflict damages on the Class without justification. The Class have been denied and deprived of an opportunity to compete effectively within the American free enterprise system and as a result The Class have sustained serious and ongoing damages, and if the wrongdoing of the Respondents is not enjoined and prevented, the damage will be permanent.

83.     Consequently, this action is brought as a private attorney general action to enforce certain federal laws, contracts, commitments, obligations and covenants to provide equal employment to correct disparate impact being caused by the neglectful use of Federal Funds thereby impacting not only the Class but as well the general public good of equal employment opportunity. The Department of Justice has failed to move against the government agencies which were the Recipients, to enforce the covenants imposed upon the Recipients to use Federal Funds.

84.     By reason of the foregoing wrongdoings of the Respondents, Plaintiffs as a Class have sustained serious, irreparable, continuing damages with no adequate remedy at law.

## XIII.   AS AND FOR A FIRST CAUSE OF ACTION

85.     The Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

86.     The acts of Respondents and each of them are in violation of the Act.

## XIV.   AS AND FOR A SECOND CAUSE OF ACTION

87.     The Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

88.     The acts of Respondents and each of them are in violation of Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§§1981, 1983 and 1985.

## XV.     AS AND FOR A THIRD CAUSE OF ACTION

89.     The Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

90.     The acts of Respondents and each of them are in violation of Executive Order 11246.

## XVI.   AS AND FOR A FOURTH CAUSE OF ACTION

91.     The Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

92.     Respondents as grant recipients, breached the grant agreements by failing to comply with all federal laws, regulations, executive orders, policies, guidelines, and requirements applicable to the acceptance and use of Federal Funds as herein before set forth, all to the damage and detriment of the Class.

93.     This wrongful and improper violation of the law by the Respondents creates barriers which cannot be allowed to continue when the real and ultimate result is permanent irreparable serious damage to a protected Class under the Constitution and federal law.

94.     The Class, as the intended beneficiaries of the Federal Funding described herein, are entitled to an accounting relative to the Respondents' Compliance with the grant and master agreements described herein, and specifically are entitled to an accounting regarding Respondents' utilization of Federal Funds in compliance with the Act, 49 CFR 21, 49 CFR 23, and 49 CFR 26, as well as Executive Order 11246.

95.    Plaintiffs are also entitled to an accounting as to how Respondents calculate both their compliance with these statutes and regulations, and, how they calculate and implement their required encouragement of "affirmative action". Upon information and belief, Respondents have no such methodology, and have failed to comply with both the very letter and spirit of these laws, which were intended for the direct benefit of the Class.

96.    Plaintiffs' request a full accounting as well as declaratory relief from this Honorable Court that they are entitled to this information, and that the Respondents be ordered to provide the same.

## XVII. THE PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this court grant the following relief:

a) Enter a declaratory judgment declaring that the acts of the Respondents and each of them to be in violation of the Plaintiffs' rights to equal employment and enjoin the Respondents and each of them from further violation of such rights.

b) Enter an order in the nature of a mandamus enjoining Respondents to provide an accounting of their acts.

c) Enter an order mandating that Respondents adopt the Alternative Employment Practice demonstrated by the Complaining Parties, using its equitable powers to fashion this Alternative Employment Practice which truly provides affirmative action to the Class which has been denied Plaintiffs' rights to equal opportunity for employment.

d) Enter an order enjoining any further payment of Federal Funds under grants to Respondents until Respondents have implemented corrective policies and procedures, conditions, covenants and obligations as asserted in this complaint so as to prevent the further waste of Federal Funds by officials of the Respondents, and from denying the Class their right to training to develop skills to compete for employment in connection with public works contracts occurring by Respondents' continued failure to abide by agreements, covenants, statutes, regulations, executive orders and other

federally approved provisions guaranteeing the right to such equal opportunity and training, and that Respondents provide an actual accounting providing actual evidence of the training of the Class of members and pray that this Court enjoin any further payment of Federal Funds to Respondents until Respondents have cured the breach of agreements, conditions, covenants, laws, regulations and obligations as asserted in this complaint and have mitigated the ongoing damage to the Class and the waste of Federal Funds by taking remedial to correct it's past wrongful conduct,

ALL together with such other and further relief as shall seem just and proper under the circumstances.

A JURY TRIAL is respectfully demanded in conjunction with the allegations made in this Complaint.

DATED 4th day of August, 2017

By: s/Shawn Morgan
Shawn Morgan, OSB No. 122103
Law Office of Shawn Morgan
6510 SE Foster Road, Ste D
Portland, Oregon 97206
Telephone: (503) 498-8528
shawn@morganlawpdx.com

Of counsel to
James M. Kernan, Esq.
Kernan Professional Group, LLP
Office and Post Office Address
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212)986-3196
Facsimile: (212)656-1213
jkernan@kernanllp.com

CLASS ACTION (ORDER OF 11-8-74)
CIVIL DOCKET

**JUDGE LASKER**



UNITED STATES DISTRICT COURT

Jury demand date: 

D. C. Form No. 106 Rev.

| TITLE OF CASE | ATTORNEYS |
|---|---|
|  | For plaintiff: |
| ALBERT E. PERCY; JOHN MERCADO; | Dennis R. Yeager |
| MANUEL MEJIA; FIGHT BACK & THE | 423 W. 118th St.; NYC 10027 |
| ADVANCEMENT OF COLORED PEOPLE | 866-8591 |
|  | William D. Wells  N.A.A.C.P. |
| vs | 1790 B'way, 10th Fl. NYC 10019 |
|  |  |
| PETER BRENNAN, Secretary of Labor; |  |
| THE UNITED STATES DEP'T OF LABOR; |  |
| BERNARD DeLURY, Ass't Sec. of Labor |  |
| for Employment Standards; |  |
| Phillip L. Davis, Director, Office |  |
| of FEDERAL CONTRACT COMPLIANCE; |  |
| NELSON A. ROCKEFELLER, Governor of |  |
| the State of N.Y.; |  |
| LOUIS L. LEVINE, Industrial Comm. |  |
| of the State of New York; the |  |
| N. Y. STATE DEPARTMENT OF LABOR; 11-8-74 sh. |  |
| the BUILDING & CONSTRUCTION TRADES |  |
| COUNCIL OF GREATER NEW YORK; the | For defendant: |
| N. Y. BUILDING & CONSTRUCTION | French Fink Markle & McCallion |
| INDUSTRY BOARD OF URBAN AFFAIRS | 110 E. 42nd St., NYC 10017  Ox 7-0880 |
| FUND; & the | (N.Y. Bldg. & Construction Ind. Bd. of |
| NEW YORK PLAN FOR TRAINING, INC. | Urban Affairs Fund & N.Y. Plan for Trn.) |
|  |  |
|  | U.S. ATTY OFFICE |
|  | % STEVEN GLASSMAN |
| 10-9-73 |  |
| and 550 |  |
| 5-1-77 |  |
|  |  |
|  |  |

| STATISTICAL RECORD | COSTS |  | DATE | NAME OR RECEIPT NO. | REC. |  | DISB. |
|---|---|---|---|---|---|---|---|
| J.S. 5 mailed  X | Clerk |  |  |  | 15 |  |  |
|  |  |  | 10-11 |  |  | 15 |  |
|  |  |  |  |  |  |  |  |
| J.S. 6 mailed | Marshal |  |  |  |  | ✓ |  |
|  |  |  |  |  |  |  |  |
| Basis of Action: | Docket fee |  |  |  |  |  |  |
| Civil Rights Class Action | Witness fees |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Action arose at: | Depositions |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

EXHIBIT 1
PAGE 1 OF 4

73 Civ. 4279 ALBERT T. PERCY, et al -v- PETER J. BRENNAN, Sec. of Labor, et al

JUDGE LASKER        78 CIV. 4279

| DATE | PROCEEDINGS | Date Order or Judgment Noted |
|---|---|---|
| Oct.9-73 | Filed complaint & issued summons. | |
| Oct.26-73 | Filed summons with marshal's return, served by certified mail, Peter J. Brennan, | |
| | Oct.11,73, | |
| | U.S. Dept. of Labor, by certified mail 10-11-73 | |
| | Bernard DeLury, by certified mail 10-11-73, | |
| | Phiddip J. Davis by certified mail 10-11-73, | |
| | Office of Federal Contract Compliance, by certified mail 10-11@73, | |
| | U.S. Atty Gen. by certified mail 10-11-@3 | |
| | Nelson A.Rockefeller, by David E. Blaney 10-12-73, | |
| | Louis L. Levene, by B.J. Diggs, 10-10-73, | |
| | N.Y. State Dept of Labor, by B.J. Diggs, 10-10-73, | |
| | Building and Construction Trades Council of Greater N.Y., by | |
| | Brendan Meade, 10-10-73, | |
| | N.Y. Building and Construction Industry Board of Urban Affairs Fund, | |
| | by Brendan Meade, 10-10-73 and | |
| | N.Y. Plan for training, Inc. by Mr. Jose Torres, 10-10-73. | |
| Oct.29-73 | Filed Amended complaint. | |
| Oct. 30-73 | Filed stip. & order extending time of defts. State of NY,et al to answer to | |
| | 12-15-73--Bauman,J. | |
| Dec.10-73 | Filed deft's notice of motion to dismiss amended complaint. Ret. | |
| | 12-22-73. | |
| Dec. 10-73 | Filed deft's memo in support of motion. | |
| Dec.12-73 | Filed pltffs Notice of Motion for preliminary injunction. Time & | |
| | place to be fixed by Court. | |
| Dec.12-73 | Filed pltffs memo of law in support of motion. | |
| Dec. 20-73 | Filed stip. & order extending defts' time to answer to 1-30-74--Bauman,J. | |
| Jan.10-74 | Filed pltfs. affdvt. and notice of motion for determination of Class.(ret.date | |
| | not noted) | |
| Jan.10-74 | Filed pltfs. memo of law in support of motion for a determination of the | |
| | class. | |
| JAN.11-74 | RE-ASSIGNED TO JUDGE LASKER | |
| Jan.18-74 | Filed deft's Bldg. & Construction Trades Council notice of motion | |
| | to dismiss amended complaint. Time & place to be fixed by Court. | |
| Jan. 18-74 | Filed deft's memo in support of motion to dismiss. | |
| Jan. 22-74 | Filed pltff's notice of motion to consolidate motions to dismiss & for partial | |
| | summary judgment--ret. at a time to be fixed by the Court | |
| Jan. 22-74 | Filed pltffs' memorandum of law in support of motion | |
| Jan. 22-74 | Filed pltffs' motion for partial summary judgment--ret. at a time & place to | |
| | be fixed by the Court. | |
| Jan. 22-74 | Filed pltffs' memorandum in support of motion | |
| Jan. 25-74 | Filed U.S.A. defts. notice of motion dismissing the action (ret. date not noted) | |
| Jan.25-74 | Filed U.S.A. defts. memo of law in opposition to pltfs. motions and in support of | |
| | motion to dismiss. | |
| Jan.28-74 | Filed pltffs affdvt & memo of law in opposition to State Deft's & | |
| | private party deft's motions to dismiss. | |
| Jan.29-74 | Filed deft's affdvt in opposition to pltffs motion for a determin- | |
| | ation of the class. | |
| Jan.29-74 | Filed deft's memo in opposition to motion. | |
| Feb.4-74 | Filed pltfs. statement pursuant to Rule 9(g) in support of motion for summary | |
| | judgment. | |
| Feb.7-74 | Filed defts. counterstatement pursuant to Rule 9(g). Re: employment of pltfs. | |
| Feb.5-74 | Filed pltfs. supplemental affdvt. | |
| Feb. 11-74 | Filed defts' counterstatement pursuant to Rule 9(g) | |

cont'd on page 2

EXHIBIT 1

PAGE 2 OF 4

73 Civ. 4279    Albert E. Percy,et al –v– Peter Brennan,et al    73 Civ. 4279

**CIVIL DOCKET**    Page 2    LASKER, J.

| DATE | FILINGS—PROCEEDINGS | AMOUNT REPORTED IN EMOLUMENT RETURNS |
|---|---|---|
| Feb. 22-74 | Filed affdvt. of Dennis R. Yeager in opposition | |
| Feb. 22-74 | Filed pltffs' memorandum of law in opposition | |
| Mar. 28-74 | Filed pltfs first set of interrogatories to defts. Brennan,U.S.A Dept. of Labor, etc. | |
| Mar. 28-74 | Filed pltfs. first set of interrogatories to defts. Building and Const. etc. | |
| Apr. 2-74 | Filed pltfs. 1st. set interrogatories to defts. Wilson, Levine and N.Y. St. Dept. of Labor. | |
| Apr 19-74 | Filed pltffs' notice of deposition of Roger Starr, & Leila Long. | |
| May 1-74 | Filed stip and order adji. deposition of Roger Starr, etc. until May 7-74, LASKER,J. | |
| May 13-74 | Filed stip and order extending time for defts. to answer interrogatories until 5-28-74. LASKER,J. | |
| May 24-74 | Filed pltffs notice to take deposition of Eugene Lattimer, Special Ass't to Chairman, NYC Housing Authority. | |
| Jun. 7-74 | Filed stip & order that notice of deposition & subpoena ret. 5-31-74 is adjourned to 6-11-74. | |
| July 18-74 | Filed Order to Show Cause & Affdvt.....Lasker, J. | |
| Jul. 18-74 | Filed Memo-End. on back of Order to Show Cause filed 7-18-74...Motion disposed of in accordacne with statement on the record 7-17-74..It is so ordered...Lasker, J. (docketed in 73 Civ 5239) | |
| Jul 18-74 | Filed Affidavit by Govt. in opposition to order to show cause & TRO. (docketed in 73 Civ 5293) | |
| Jul 22-74 | Filed Notice of Appeal by The N.Y. Bldg. & Const. Ind. Bd of Urban Affairs fund, deft. from an order entered in this proceeding on Jul 18-74.. copies mailed on 7-24-74 to:Paul Curran, U.S. Atty.---Louis Lefkowitz,NYS Atty Gen----Dnnis R. Yeager Esq.----Nathaniel R. Jones, Gen Counsel-NAACP-- Adrian P. Burke Esq. Corp. Counsel NYC-. | |
| SEPT 5-74 | Filed transcript of record of proceedings, dated JULY 17, 1974 | |
| Nov 8-74 | Filed Memorandum#41415......Accordingly, the motion is granted allowing this action to be maintained as a class and the class is defined as "all black and Spanish-surnamed persons who are capable of performing, or capable of learning to perform, construction work, and who wish to per- form construction work within the jurisdiction of unions that are members of the deft. Building & Constr. Trades Counceil of Greater NY.Y." For the reason set forth(See Memnmandum) the motions to dismiss are denied except as to the N.Y.S. Dept of Labor. The motions for class determination and for partial summary judg. are granted. the motion for preliminary relief is | |

(CONTINUED ON PAGE #3)    granted to the extent indicated. It is so ordered....Lasker, J.    m/n

EXHIBIT ____1

PAGE __3__ OF __4__

73 Civ 4279 MEL                    PERCY ET AL    VS   BRENNAN ET AL

Page #3

| DATE | FILINGS—PROCEEDINGS | AMOUNT REPORTED IN EMOLUMENT RETURNS |
|------|---------------------|--------------------------------------|
| Nov 14-74 | Filed Order to Show Cause by Pltffs.  for an order enjoining defts....ret. | |
| | ...11-20-74...10 AM . | |
| Nov 19-74 | Filed Pltffs' Ex-Parte Motion for leave to communicate with Class Member..No | |
| | Date of Ret. Given. | |
| Nov 19-74 | Filed Pltffs'  Memorandum of Law in support for an order granting leave to | |
| | communicate with class members. | |
| Nov 18-74 | Filed Pltffs' Notice of Deposition of George Daly. | |
| Nov 18-74 | Filed Pltffs' Notice of Deposition of Claudius Johnson. | |
| Nov 22-74 | Filed Order that defts. U.S. Dept. of Labor, Peter Brennan, Bernard Delury & Phillip | |
| | J. Davis are hereby enjoined from further enforcement of 29 C.F.R. %60-1.4 | |
| | (39 Fed. Reg. 2365( Jan 21-74))...Lasker, J.   m/n | |
| Jan 6,1975 | Filed transcript of record of proceedings, dated    Nov.26,1974 | |
| Jan 13-75 | Filed Order from USCA(true Copy) dismissing the appeal takUSCA.    m/n | |
| Feb 24-75 | Filed Memo-End on back of motion filed 11-19-74....motion denied without pre- | |
| | judice to renewal if necessary to protect the reights of members of the Class | |
| | under the tearms of the order filed concurrently wherewith. It is so Ordered... | |
| | Lasker,J. m/n | |
| Feb 25-75 | Filed Order that further proceedings are stayed unless the court directs otherwise; | |
| | and that no deft. in this action shall enter into any agreement with any other deft. | |
| | or any other entity prociding for a new affirmative action program for public con- | |
| | struction in the City of N.Y. which shall become effective unless approved by order | |
| | of this court after having been submitted in writing to counsel forthe pltffs. here- | |
| | in........and that the court retains jurisdiction of this action until 7-15-76 for | |
| | the purpose of entertaining applications from any party for relief relating to ad- | |
| | herence to the aforementioned assurances and to the court's prior orders of 11-8-74 | |
| | and 11-21-74 or for an order dismissing the complt. herein; and that pltffs' appli- | |
| | cation for costs and attys fees is denied without prejudice to renewal on a plenary | |
| | motion for such relief...Lasker,J. m/n | |
| Mar 7-75 | Filed Pltffs' Affdvt. of Service by Dennis R. Yeager, dated 3-5-75. | |
| 4-23-75 | Filed transcript of record of proceedings, dated Feb. 28,1975 | |
| 07-14-76 | Filed Order that the Order of 2-24-75 is amended to the extent that the Court retains | |
| | jurisdiction of this action until 12-31-76........Lasker,J.  (mailed notice) | |
| 12-15-76 | Filed order  that Order of Feb 24, 1975 is amended to the extent that the Court retains | |
| | jurisdiction of this action until 7-1-77  Lasker J. | |
| 5-1-77 | Filed Duplicate Orig. Minute entry pur. Adm. Office memo. dated 5-15-73 | |
| | that this action not be maintained as an open one for statistical purposes | |
| | and that it may be initiated for further proceedings at any time by any party | |
| | as if this minute entry has not been entered. So ordered  Chief Judge Edelste: | |
| | n/n | |
| 7-12-77 | Filed transcript of record of proceedings, dated 5-4-77. | |

EXHIBIT ____1

PAGE _4_ OF _4_