# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives and Records Administration, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | | |
|---|---|---|
| *Trina Yeckley* | | |
| NAME | | DATE |
| Trina Yeckley | | 7/24/17 |
| TITLE | | |
| Archivist | | |
| NAME AND ADDRESS OF DEPOSITORY | | |
| National Archives at New York City | | |
| One Bowling Green, 3rd floor | | |
| New York, NY 10004 | | |

NA FORM 13040 (10-86)

GREATER NEW YORK; the NEW YORK BUILDING
INDUSTRY AND CONSTRUCTION INDUSTRY BOARD
OF URBAN AFFAIRS FUND; and the NEW YORK
PLAN FOR TRAINING, IN

- - - - - - - - - - - - - Defendants.
- - - - - - - - - - - - - - - - - - - -X

APPEARANCES:

DENNIS R. YEAGER, ESQ.
423 West 118th Street
New York, New York 10027

NATHANIEL R. JONES, ESQ.
WILLIAM D. WELLS, ESQ.
1790 Broadway - 10th Floor
New York, New York 10019

Attorneys for Plaintiffs


PAUL J. CURRAN, ESQ.
United States Attorney for the Southern District
of New York
United States Court House
New York, New York 10007
    JOEL B. HARRIS, ESQ.
    Assistant United States Attorney

*Memo - OPINION*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -X

ALBERT E. PERCY, JOHN MERCADO, MANUEL
MEJIA, FIGHT BACK and the NATIONAL
ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE,

                              Plaintiffs,

              -against-

PETER J. BRENNAN, Secretary of Labor;
THE UNITED STATES DEPARTMENT OF LABOR;
BERNARD DeLURY, Assistant Secretary of
Labor for Employment Standards; PHILLIP
J. DAVIS, Director, Office of Federal
Contract Compliance; the OFFICE OF
FEDERAL CONTRACT COMPLIANCE: NELSON A.
ROCKEFELLER, Governor of the State of New
York; LOUIS L. LEVINE, Industrial Commis-
sioner of the State of New York; the NEW
YORK STATE DEPARTMENT OF LABOR; the BUILD-
ING AND CONSTRUCTION TRADES COUNCIL OF
GREATER NEW YORK; the NEW YORK BUILDING
INDUSTRY AND CONSTRUCTION INDUSTRY BOARD
OF URBAN AFFAIRS FUND; and the NEW YORK
PLAN FOR TRAINING, INC.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - -X

# 41415

73 Civ. 4279

MEMORANDUM

APPEARANCES:

  DENNIS R. YEAGER, ESQ.
  423 West 118th Street
  New York, New York 10027

  NATHANIEL R. JONES, ESQ.
  WILLIAM D. WELLS, ESQ.
  1790 Broadway - 10th Floor
  New York, New York 10019

  Attorneys for Plaintiffs


  PAUL J. CURRAN, ESQ.
  United States Attorney for the Southern District
    of New York
  United States Court House
  New York, New York 10007
    JOEL B. HARRIS, ESQ.
    Assistant United States Attorney

LOUIS J. LEFKOWITZ, ESQ.
Attorney General, State of New York
Two World Trade Center
New York, New York 10047
Attorney for Defendants
  LLOYD G. MILLIKEN, ESQ.
  Assistant Attorney General

WALTER H. COLLERAN, ESQ.
DORAN, COLLERAN, O'HARA, PELLIO & DUNNE, P.C.
1140 Avenue of the Americas
New York, New York 10036
Attorneys for Building and Construction Trades
  Council of New York, etc.

ROBERT G. BENISCH, ESQ.
BERMAN, PALEY, GOLDSTEIN & BERMAN, ESQS.
500 Fifth Avenue
New York, New York
Attorneys for The New York Plan for Training,
  Inc., etc.

ROBERT J. FINK, ESQ.
FRENCH, FINK, MARKLE & McCALLION, ESQS.
110 East 42nd Street
New York, New York 10017
Attorneys for the New York Plan for Training, Inc.
 etc.

LASKER, D.J.

This case, brought on behalf of minority persons seeking training and employment in the New York construction industry, challenges the affirmative action plan, ("the New York Plan") which currently governs Federal and State assisted construction projects in New York City. The primary claim raised by the complaint is that the New York Plan fails to guarantee equal protection and the right to equal employment opportunities as required by the United States Constitution, 42 U.S.C. §1981 and Executive Order No. 11246.  At issue also is the validity of federal and state attempts to pre-empt local government efforts to impose affirmative action  requirements which are more rigorous than those contained in the New York Plan, although our decision in City v. Diamond, 379 F. Supp. 503 (1974) has at least partially disposed of this aspect of the case.
S.D.N.Y.

The plaintiffs are Albert Percy, Manuel R. Mejia, and John Mercado, who move to represent a class of fellow black and Spanish-surnamed individuals seeking employment in the construction industry, and two organizations, Fight Back and National Association for the Advancement of Colored People (NAACP). Defendants are the Secretary of Labor, the United States Department of Labor, the Assistant Secretary of Labor for Employment Standards,

1.

the Director of the Office of Federal Contract Compli-
ance, and the Office of Federal Contract Compliance,
(federal defendants); the Governor of the State of New
York, the Industrial Commissioner of the State of New
York and the New York State Department of Labor (state
defendants); and the Building and Construction Trades
Council of Greater New York, the New York Building and
Construction Industry Board of Urban Affairs Fund (Fund)
and the New York Plan for Training, Inc. (private defend-
ants).

        Plaintiffs seek declaratory relief and an injunc-
tion ordering the federal and state officials to abandon
the New York Plan, to withdraw memoranda which prohibit
local governments from imposing any equal employment oppor-
tunity requirements which have not been approved by
federal and state Departments of Labor, and to promulgate
affirmative action goals for public construction sites
which comport with the requirements of the United States
Constitution, 42 U.S.C. §1981 and Executive Order No.
11246.  Plaintiffs move for a preliminary injunction,
partial summary judgment and a class action determination. 1/
All defendants move to dismiss.  We deal initially with
those facts and legal challenges going to the validity
of the New York Plan, and then consider the remaining
issues.


                              2.

## I.   THE NEW YORK PLAN

### A.   FACTS

The New York Plan was established in 1970 to com-
ply with Executive Order No. 11246 (Order) which imposed
broad equal employment obligations on federal and feder-
ally-assisted contractors.  Part I of the order requires
that federally-funded contracts include the provision
that:

> "The contractor will not dis-
> criminate against any employee or
> applicant for employment because
> of race, color, religion, sex, or
> national origin.  The contractor
> will take affirmative action to
> ensure that applicants are employed
> and that employees are treated
> during employment, without regard
> to their race, color, religion, sex
> or national origin.  Such action
> shall include, but not be limited
> to the following:  employment,
> upgrading, demotion, or transfer;
> recruitment or recruitment adver-
> tising; layoff or termination;
> rates of pay or other forms of
> compensation; and selection for
> training, including apprentice-
> ship."  Order at §202.

The contractor must also undertake to "comply with all
provisions of Executive Order No. 11246 ... and of the
rules, regulations, and relevant orders of the Secretary
of Labor."  Order at §202.

The Secretary of Labor is responsible for en-
forcement of the compliance provisions of the order,

3.

contained in Parts II and III.  Order at §201.  The Di-
rector of the Office of Federal Contract Compliance is
authorized to implement the equal employment policies
of the Secretary of Labor.  (Order No. 15-68 of the
Secretary of Labor, 33 Fed. Reg. 2600 (Sept. 4, 1968).)
Compliance with the order is obtained through adherence
either to an "imposed plan" or a "hometown plan".

    An imposed plan, as the name indicates, is a plan
which is imposed by the Secretary of Labor, establishing
yearly minority employment goals on a trade-by-trade basis,
with increasing minority participation each year.  Responsi-
bility for compliance rests with individual contractors.
A hometown plan typically combines the efforts of local
contractors and contractors' associations, building
trades unions and minority organizations, and results
in the formulation of a plan for voluntary compliance with
the order.  Under a hometown plan, minority participation
obligations fall on the trade as a whole rather than on
any individual contractor, and can be satisfied by minority
employment or training on any work performed by the trade,
whether federally-funded or private.  The hometown plan
approach holds the unions rather than the individual
contractors responsible for complying with the affirmative
action requirements.  An administrative committee assigns

4.

"fair share goals" to individual contractors. A hometown
plan must be submitted to the Office of Federal Contract
Compliance for approval and, if approved, is incorporated
by reference into Part I of the Federal Equal Employment
Opportunity Bid Conditions (Federal Bid Conditions) used
for all non-exempt federally-assisted construction pro-
jects in the geographical area of the hometown plan.

For any trades not participating in the hometown
plan, mandatory affirmative action requirements are set
forth in Part II of the Federal Bid Conditions. Responsi-
bility for compliance with these requirements is imposed
directly on the individual contractor, rather than on the
non-participating trade as a whole.

Part IV of the Federal Bid Conditions provides
that the failure of a contractor to make good faith
efforts to meet his fair share obligations under a home-
town plan can result in his being placed under Part II
of the conditions, as well as possible imposition of the
sanctions authorized by Section 209 of Executive Order
No. 11246.

The federally approved hometown plan in New York
City, which is challenged here, is the New York Plan. It
was submitted to the federal government for approval in
1970 by the Board of Urban Affairs, an entity created
by the New York Building and Construction Trades Council,

5.

which, in turn, represents labor unions and two contractor associations (the Building Trades Employers Association and the General Contractors Association). The New York Plan became effective after approval respectively by the Mayor (Executive Order #31), the Governor (Executive Order #43) and, in August 1971, by the Office of Federal Contract Compliance. The Plan has been extended from time to time and is presently scheduled to expire at the end of December, 1974.

The New York Plan (Amended Complaint, Exhibit A) (Plan) originally specified that "The number of Trainees the program shall provide for within the first year shall be set at 800 maximum."(Plan, Article IV, of §2)   Goals were established on a craft-to-craft basis, and qualified graduates of the program were to be recommended to the appropriate union "for consideration for membership." (Plan, Article II, §2).

The Plan expired by its terms on July 1, 1972, but, as indicated already, it has been extended from time to time.  The extended plan differs from the original in providing for the training of 1,000 rather than 800 minority workers. 2/

B.  MOTIONS TO DISMISS

The grounds of the motions to dismiss include: (1) the federal defendants' claim that the plaintiffs

have failed to exhaust federal administrative remedies;
(2) the state and private defendants' claim that the
plaintiffs have failed to exhaust federal, state and city
administrative remedies; (3) the federal defendants'
assertion that the individual plaintiffs lack standing;
(4) the private defendants' claim that Fight Back and
NAACP lack standing; (5) the state defendants' claim
that the State Department of Labor is immune from suit;
and (6) their assertion that the complaint fails to state
a cause of action against the Governor and the Industrial
Commissioner. 3/

   1. Exhaustion of Federal Administrative Reme-
     dies Under 28 U.S.C. §1331.

  The federal defendants move to dismiss for failure
by the plaintiffs to submit their complaint to the Equal
Employment Opportunity Commission and the Director of
the Office of Federal Contract Compliance.  Their motion
is denied because these administrative procedures cannot
afford plaintiffs the relief they request.

  Although Congress established an Equal Employ-
ment Opportunity Commission to hear cases involving
employment discrimination, the jurisdiction of the Com-
mission is limited to complaints which allege "that an
employer, employment agency, labor organization or joint
labor-management committee controlling apprenticeship or
other training or retraining, including on-the-job
training programs, has engaged in an unlawful employment

practice." 42 U.S.C. §2000e-4. Sections 2000e-2 and
2000e-3, which define "unlawful employment practices,"
do not include the promulgation of an unconstitutional
affirmative action plan. [4/]

The cases cited by the federal defendants do not
support their claim, for while the court in Hadnott v.
Laird, 463 F.2d 304, 305 (D.C. Cir. 1972) dismissed the
complaint for the plaintiffs' failure to appear first
before the Equal Employment Opportunity Commission,
the claim there essentially alleged that individual em-
ployers were failing to fulfill their contractual commit-
ment to non-discrimination. Similarly, in Freeman v.
Shultz, 463 F.2d 120 (D.C. Cir. 1972), plaintiffs sought
to enjoin the award of contracts to employers who had
discriminated on the basis of race. Yet here, as
plaintiffs note, the complaint is not one under Title VII;
plaintiffs here are not asking that the sanctions of Ex-
ecutive Order No. 11246 be imposed upon third parties who
fail to fulfill contract obligations but that the federal
defendants themselves be enjoined. (Plaintiffs' Memorandum
at p. 25). And in a case similar to the one here, where
contractors challenged the constitutionality of an "im-
posed plan" (the Philadelphia Plan) the district court
stated, "It is apparent that the legal issue that the
plaintiffs here presented is fit for judicial resolution."

8.

No indication was made of a previous determination by
the Equal Employment Opportunity Commission, which sug-
gests that no such appearance was found to be required.
Contractors Ass'n of Eastern Pa. v. Sec'y of Labor, 311
F.Supp. 1002, 1007 (E.D. Penn. 1970), aff'd, 442 F.2d 159
(3d Cir. ), cert. denied, 404 U.S. 854 (1971).

Neither can plaintiffs seek relief from the Di-
rector of the Office of Federal Contract Compliance. [5/]
Regulations promulgated by the Office give the Director
power to ensure compliance with Executive Order No. 11246,
but however broad the scope of those regulations, a
complainant may only challenge the alleged discrimination
of a "prime contractor or subcontractor", (41 C.F.R. §1.23
(a)), not the unconstitutionality of the contract's
equal employment opportunity clause itself.

2.  Exhaustion of Federal Administrative
Remedies Under 48 U.S.C. §1981.

The state defendants also assert that plaintiffs
have adequate remedies under federal statutes.

As noted above, Title VII of the Civil Rights Act
of 1964, does not prohibit discriminatory acts by
government officials except where the government is the
employer.  Nor does it proscribe the activities of govern-
ment officials or private entities which operate to foster
discrimination by employers or unions.

9.

But even if an action under Title VII were appropriate, Congress specifically rejected the proposition that resort to the remedies of Title VII should be a prerequisite to anti-discrimination suits under 42 U.S.C. §1981.  The House and Senate Committees that reported the bills that became the 1972 amendments to Title VII disavowed any intent to restrict rights under 42 U.S.C. §§1981 and 1983.  See H.R. Rep. No. 92-238, 92d Cong., 1st Sess. 18-19 (1971); Sen. Rep. 92-415, 92d Cong., 1st Sess. 24 (1971).  The House Report states:

> "In establishing the applicability of Title VII to State and local employees, the committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to ... 42 U.S.C. §§1981 and 1983, is in no way affected ... two recent court decisions, Young v. International Telephone and Telegraph Co., 438 F.2d 757 (3d Cir. 1971) and Saunders [sic] v. Dobbs House, 431 F.2d 1097 (5th Cir. 1970), have affirmed this committee's belief that the remedies available to the individual under Title VII are co-extensive with the individual's right to sue under ... 42 U.S.C. §1981, and that the two procedures augment each other and are not mutually exclusive.  The bill, therefore, ... does not affect existing rights that such individuals have already been granted by previous legislation."  H.R. Rep. 92-238, 92d Cong., 1st Sess. at 19 (1971).

10.

See Young v. International Telephone and Telegraph Co.,
438 F.2d 757, 763-764 (3d Cir. 1971) and Sanders v.
Dobbs Houses, Inc., 431 F.2d 1097, 1101 (5th Cir. 1970),
cert. denied, 401 U.S. 948 (1971); see also Caldwell v.
National Brewing Co., 443 F.2d 1044 (5th Cir. 1971),
cert. denied, 405 U.S. 916 (1972).

    3.   Exhaustion of State and City Administra-
        tive Remedies.

    The State and private defendants' claim that
plaintiffs have adequate remedies under state and city
fair employment practice laws, and that judicial action is
appropriate only upon exhaustion of those remedies, also
fails.  The Commissions established by New York State
Human Rights Law and New York City are authorized only
to hear complaints involving discriminatory employment
practic es by employers, employment agencies, labor
organizations and apprenticeship committees, N.Y. Exec.
Law §§296, 297; N.Y. City Admin. Code §131-7.0(a)-(c),
and have no jurisdiction as to governmental action, or
indeed action by any entity not falling within the cate-
gories just designated.

    The plaintiffs cannot be required to exhaust
state procedures where there is "no administrative remedy
by which plaintiffs could have any assurance of getting
the relief they wanted...." Eisen v. Eastman, 421 F.2d

11.

560, 569 (2d Cir. 1969); <u>Plano v. Baker</u>, Docket No. 74-1527 (2d Cir. October 11, 1974) (Slip op.); <u>see</u> <u>McNeese</u> <u>v. Board of Education</u>, 373 U.S. 668 (1963). As the <u>Eisen</u> court stated, "Exhaustion of state administrative remedies is not required where the administrative remedy is inadequate ... or where it is certainly or probably futile." 421/ The case at hand supports this position

F.2d at 569.

even more strongly than did the facts in <u>Eisen</u>. In <u>Eisen</u> an administrative remedy clearly existed, which would have been futile to invoke because earlier decisions dictated an adverse outcome. Here the administrative remedy does not even exist as to the subject matter in dispute.

    4. <u>Standing of the Individual Plaintiffs.</u>

      The federal defendants assert that plaintiffs lack standing to seek relief for the class they represent because the claim of discrimination alleged here is not properly directed against them, but rather is, or should be, lodged against the unions and employers in the New York City building trades, and that therefore the essential "logical nexus between the status asserted by the litigant[s] and the claim [they] represent" is missing. <u>Flast v. Cohen</u>, 392 U.S. 83, 102 (1968). It is true that the amended complaint states:

12.

> "The inability of the plaintiffs
> and the class they represent to ob-
> tain employment or training is the
> direct result of employment prac-
> tices of construction industry
> unions and employers in the New
> York City area which discriminate
> against black and Spanish-surnamed
> persons." (¶24)

Yet the fact that contractors and unions discriminate

against minority persons in no way precludes the existence

of unlawful, if somewhat less direct, discrimination by

others.

To establish standing a party must allege "such

a personal stake in the outcome of the controversy as to

assure that concrete adverseness which sharpens the

presentation of issues upon which the court so largely

depends for illumination of difficult constitutional

questions." Baker v. Carr, 369 U.S. 186, 204 (1962);

see Flast v. Cohen, supra/at 101.  As black and Hispanic

392 U.S.

construction workers who allegedly have been and continue

to be denied employment in the New York construction

industry, the individual plaintiffs have initially demon-

strated "a personal stake".

The existence of standing depends first on

"whether the plaintiff alleges that the challenged action

has caused him injury in fact, economic or otherwise",

Association of Data Processing Service v. Camp, 397 U.S.

13.

150, 152 (1970), and second on whether the plaintiffs
are "within the class of persons that the -- provision[s]
were designed to protect." Association of Data Proces-
sing, 397 U.S. at 155.

The injury alleged here is not, as the federal de-
fendants assert, the denial of job opportunities alone,
but rather, as in Norwalk C.O.R.E. v. Norwalk Redevelop-
ment Agency, 395 F.2d 920, 927 (1968), abridgement of
"the right not to be subjected to racial discrimination
in government programs." The federal defendants are
charged with enforcement of Executive Order No. 11246; if
they have, by approval of the New York Plan, failed to enforce
that order, this approval has "affirm[ed] the discrimina-
tion" of the construction industry and has inflicted an
injury upon plaintiffs. Norwalk C.O.R.E. v. Norwalk
Redevelopment Agency/at 931; see Barlow v. Collins, 397
supra 395 F.2d
U.S. 159, 163-4 (1970).

As to the second requirement, the plaintiffs are
obviously "within the class of persons that the ...
provision[s] were designed to protect."Association of Data
Processing, at 155. Injuries resulting from racial dis-
supra, 397 U.S.
crimination fall squarely within the protections of
Fifth and Fourteenth Amendments to the Constitution, 42
U.S.C. §1981, and Executive Order No. 11246.

14.

5.  Standing of Fight Back and NAACP.

The private defendants challenge the standing of
the organizational plaintiffs, Fight Back and NAACP.
Their argument, however, flies in the face of the Supreme
Court's ruling that, "It is clear that an organization
whose members are injured may represent those members in
a proceeding for judicial review." Sierra Club v. Morton,
405 U.S. 727, 739 (1972); see, e.g., NAACP v. Button , 371
U.S. 415, 428 (1963); Nat'l Welfare Rights Organization
v. Wyman, 304 F. Supp. 1346, 1348 (E.D.N.Y. 1969).

The amended complaint describes Fight Back as
an organization of black and Hispanic construction workers
which devotes the majority of its efforts to obtaining
employment for such workers in the New York construction
industry (¶¶6, 29).  NAACP is a national organization
which seeks to protect the civil rights of black persons.
(Amended Complaint, ¶¶ 7, 29), and which has previous-
ly represented its members in anti-discrimination suits.
See, e.g., NAACP v. Button, supra; NAACP v. Alabama,
357 U.S. 449 (1958).  In contrast to the organizational
plaintiff in Sierra Club, which was found to lack standing
because it failed to allege that its members "would be
significantly affected by the ... actions of the respond-
ents," Sierra Club v. Morton, supra, 405 U.S. at 735, both

15.

the members of Fight Back and NAACP and the organizational
aims of these two groups are alleged to be directly and
adversely affected by the inadequacies of the New York
Plan.  Under these circumstances the organizations have
standing to represent their members.  This conclusion is
particularly appropriate where, as here, "representation
of the interests involved is the primary reason for the
organization's existence," United States v. Board of School
Commissioners, Indianapolis, Indiana, 466 F.2d 573, 576-7
(7th Cir. 1972), cert. denied, 410 U.S. 909 (1972), or its
                                          Re
"raison d'etre", Norwalk C.O.R.E. v. Norwalk/development
Agency, supra, 395 F.2d at 937.

        Alternatively, the private defendants move to
dismiss as to Fight Back and NAACP on the ground that the
organization plaintiffs are not members of the class which
the plaintiffs seek to represent, and that a class of
persons and associations representing members of the class
cannot both proceed as proper plaintiffs.  The proposition
is unsupportable.  Norwalk C.O.R.E. v. Norwalk Redevelop-
                                395 F.2d at 937.
ment Agency, supra,/  In the only case cited by defendants,
Contractors Ass'n of Eastern Pa. v. Sec'y of Labor, supra,
311 F. Supp. at 1007, the District Court did dismiss an
association after granting class relief.  However, in
affirming, the Circuit Court noted, supra, 442 F.2d at
166:

                        16.

"The district court's holding that
the Association lacked standing to
sue was handed down prior to that
of the Supreme Court in Association
of Data Processing Service Organi-
zations, Inc. v. Camp, 397 U.S.
150, 90 S.Ct. 827, 265 L.Ed. 2d 184
(1970), and in the light of that de-
cision and the more recent decision
in Citizens to Preserve Overton
Park, Inc. v. Volpe, 401 U.S. 402,
91 S.Ct. 814, 28 L.Ed. 2d 136 (1971),
is at least doubtful."

It is not alleged that the aims of the organizations

conflict with those of the plaintiffs or the class they

seek to represent.  See Stewards v. American Airlines,

455 F.2d 41 (7th Cir. 1972).  The determination of a

class would therefore not alter a finding that Fight Back

and NAACP have standing under Data Processing.

        6.   The Suit Against the State Department
             of Labor.

        The claim against the Department of Labor under

42 U.S.C. §1981 must be dismissed because a state and

its agencies are not "persons" within the meaning of the

Civil Rights Act.  Bruno v. City of Kenosha, 412 U.S. 507,

511-13 (1973); Monroe v. Pape, 365 U.S. 167 (1961).

Furthermore, the doctrine of sovereign immunity bars the

claim under the Constitution and Executive Order No. 11246,

Larson v. Domestic and Foreign Corp., 337 U.S. 682 (1949);

Hans v. Louisiana, 134 U.S. 1 (1889), and the statutory

waiver by New York State of its immunity does not encom-

17.

pass this complaint. Maloney v. New York, 207 Misc. 894

(Ct. of Claims, 1955), aff'd, 2 A.D. 2d 195 (4th Dept.

1956), aff'd, 3 N.Y.2d 356 (1957); Breen v. Mortgage

Commission, 285 N.Y. 425 (1941).

   7. The Suit Against the Governor and
      Industrial Commissioner

Finally, the state defendants argue that the com-

plaint fails to state a cause of action against the Gover-

nor and the Industrial Commissioner of the State of New York.

In reviewing a motion to dismiss for failure to

state a claim against a state official, the Supreme Court

recently reiterated the proposition that "the allegations

of the complaint should be construed favorably to the

pleader," Sheuer v. Rhodes, 42 U.S.L.W. 4543, 4544,

_____ U.S. _____ (April 17, 1974), and "should not be dis-

missed for failure to state a claim unless it appears

beyond doubt that plaintiff could prove no set of facts

in support of his claim which would entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45 (1957), cited in Sheuer

v. Rhodes, supra.

The amended complaint alleges that the Governor

of New York is charged with the duty of enforcing equal

employment opportunity requirements applicable in the

State of New York, and the Industrial Commissioner is

responsible for enforcing equal employment opportunity

requirements on New York public construction sites.

18.

¶¶ 14, 15)        Under the test of Sheuer, the complaint
here clearly states a viable claim against the Governor
and Commissioner since proper enforcement of equal employ-
ment opportunity requirements is the very essence of
plaintiffs' claim.   The motion to dismiss the complaint
against these officials is therefore denied.

   C.   MOTION FOR A DETERMINATION OF A CLASS

        Plaintiffs Percy, Mejia and Mercado move for an
order allowing this action to be maintained as a class
action pursuant to Rules 23(a) and (b)(2) of the Federal
Rules of Civil Procedure on behalf of themselves and "all
other black and Spanish surnamed persons who are capable
of performing, or capable of learning to perform, con-
struction work, and who wish to perform construction work
within the jurisdiction of unions that are members of
the defendant Building and Construction Trades Council
of Greater New York."

        Rule 23(a) states:

        "(a) Prerequisites to a class action.
        One or more members of a class may
        sue or be sued as representative
        parties on behalf of all only if (1)
        the class is so numerous that joinder
        of all members is unpracticable,
        (2) there are questions of law or
        fact common to the class, (3) the
        claims or defenses of the repre-
        sentative parties are typical of
        the claims or defenses of the
        class, and (4) the representative
        parties will fairly and adequately
        protect the interests of the class."

                        19.

The private defendants argue that plaintiffs have not
met the requirements of subdivisions (a)(2) and (a)(3).
The complaint seeks recission of federal approval of
the New York Plan which by its terms limits the number
of trainee positions to a maximum of 1,000 and which
makes no provision for skilled minority workers.  Any
determination as to whether the Plan violates the United
States Constitution or Executive Order No. 11246 neces-
sarily involves common issues of law or fact.  ((a)(2)
of Rule 23)  Where, as here, the common issues
predominate over       any factual disparities among the
members of the class, the requirements of Rule 23(a)(2)
are satisfied.  Cortright v. Resor, 325 F.Supp. 797, 808
(E.D.N.Y. 1971), rev'd on other grounds, 447 F.2d 245
(2d Cir. 1971), cert. denied, 405 U.S. 965 (1972); accord,
Escalara v. New York City Housing Authority, 425 F.2d 853,
867 (2d Cir. 1970), cert. denied, 400 U.S. 853 (1970);
Norwalk C.O.R.E. v. Norwalk Redevelopment Agency, supra,
at 937.

          Plaintiffs' claims are also typical of the class
claims.  Rule 23(a)(3).  The facts here virtually mirror
those in Rios v. Enterprise Assocation Steamfitters Loc.
U. #638 of U.A., 54 F.R.D. 234, 236 (1973), in which Judge
Tenney approved the maintenance of an action on behalf of

a nearly identical class.  The fact that <u>Rios</u> involved

the steamfitting industry and the claim here extends to

the New York City construction industry does not, as

defendants suggest, render the plaintiffs' claims any

less typical than those in <u>Rios</u>, or make the proposed

class amorphous.  Rule 23 sets no geographical or numeri-

cal limit as such on the scope of a class.  <u>See</u> <u>Rosado v.</u>

<u>Wyman</u>, 322 F.Supp. 1173, 1190-2 (E.D.N.Y. 1970), <u>aff'd</u>

437 F.2d 619 (2d Cir. 1971), <u>aff'd mem.</u>, 402 U.S. 991

(1971).

The federal defendants argue, however, that al-

though plaintiffs may have met the applicable standards

of Rule 23, their pleadings do not establish a need for

a class action  (Memorandum at page 25).  We know of no

rule which requires the demonstration of such a need

in a 23(b)(2) case, the predicate of which is that "the

party opposing the class has acted or refused to act

on grounds generally applicable to the class, thereby

making appropriate final injunctive relief or correspond-

ing declaratory relief with     respect to the class as

a whole."

It is true that the court in <u>Galvin v. Levine</u>,

490 F.2d 1255, 1261 (2d Cir. 1973), approved the denial

of a class determination where class relief would be

21.

"largely a formality" because "the State ... made it
clear that it understands the judgment to bind it with
respect to all claimants; indeed, even before entry of the
judgment, it withdrew the challenged policy more fully
than the Court ultimately decreed and stated it did not
intend to reinstate the policy."  No such showing has
been made here, and since Rule 23 grants plaintiffs the
right to proceed as a class, they are entitled to do so
without demonstrating the necessity of class relief.
See Notes of Advisory Committee on Rules Relating to the
1966 Amendments of Federal Rules of Civil Procedure
23(b)(2), U.S.C. Appendix 1601 (Supp. III 1967); 3B Moore,
Federal Practice, ¶23.40 (2d Ed. 1969); Wright and
Miller, Federal Practice and Procedure: Civil §§1775, 1776,
(1972).  But see Tyson v. New York City Housing Authority,
369 F.Supp. 513, 516 (S.D.N.Y. 1974) (Metzner, J.);
McDonald v. McLucas, 371 F.Supp. 831, 833-4 (S.D.N.Y. 1974)
(Metzner, J.)  We have carefully reviewed the other argu-
ments made in opposition to a class determination, and find
them without merit.

Accordingly, the motion is granted allowing this
action to be maintained as a class and the class is
defined as "all black and Spanish-surnamed persons who
are capable of performing, or capable of learning to

22.

perform, construction work, and who wish to perform con-
struction work within the jurisdiction of unions that
are members of the defendant Building and Construction
Trades Council of Greater New York."

D.  MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs move for preliminary relief prohibiting
further implementation of the New York Plan. [6/]    Crucial
gaps in the record necessitate denial of the motion even
though we recognize that the Plan may well be constitu-
tionally defective.

The Plan imposes an obligation to enroll a "maxi-
mum" of 1,000 trainees to be employed on all city,
state and federally-assisted construction sites in
New York City; makes no provision for employment of
already skilled non-whites; and establishes no require-
ment that graduate trainees be accepted into any
union.  Whether this scheme discharges the duty placed
by the order on federal and state officials to com-
pensate for and effectively oversee the eradication
of employment discrimination is at the very least ex-
tremely doubtful in view of the well-documented history
of discrimination by New York City construction industry
unions and employers. [7/]    If the requirements of the Plan
are so minimal that they result, albeit unintentionally,
in governmental acquiescence in racially discriminatory

23.

practices, then greater efforts are mandated by the Con-
stitution and federal law, and until a more rigorous plan
is imposed, the rights of plaintiffs and the class they
represent are being violated.  See United States v. Hayes
International Corporation, 415 F.2d 1038 (5th Cir. 1969);
Gautreaux v. Romney, 448 F.2d 731 (7th Cir. 1969); Garrett
v. City of Hamtramck, 335 F. Supp. 16 (E.D. Mich. 1971);
Hicks v. Weaver, 302 F. Supp. 619  (D.La. 1969); Ethridge
v. Rhodes, 268 F.Supp. 83 (S.D. Ohio 1967).

    Nevertheless, as plaintiffs candidly admit, an
evidentiary hearing is necessary to establish facts which
are critical to/determination  of the Plan's validity.
                   a
The actual method by which trainees are selected and
employed under the New York Plan is unclear.  And the
ambiguity of the Plan's provision that a "maximum" of
1,000 trainees are to be included in the program is both
puzzling and troublesome.  We are reluctant to enjoin
the Plan without a developed knowledge of its actual
impact in operation.

    As the court observed in Pride v. Community School
Board of Brooklyn, N.Y. School District #18, 482 F.2d 257,
276 (2d Cir. 1973), "What is involved [in a motion for a
preliminary injunction] is an evaluation of where the
equities lie, considering in addition to the hardships
such factors as the uncertainty of the issues raised...".

The question of what minimal goals an affirmative action
program must set to satisfy the requirements of Executive
Order No. 11246 has never been judicially determined.
To grant preliminary relief in a case of first impression
which poses such potential widespread ramifications and to
do so without the benefit of a fully-developed record
would be unwisely premature.  Since a hearing on the motion
will clearly be protracted (e.g., plaintiffs anticipate
calling approximately fifteen witnesses), the hearing will
be consolidated with the trial on the merits as provided
by Rule 65(a)(2) of the Federal Rules of Civil Procedure.

Having disposed of the motions relating to the
Plan, we turn to the remaining issues.

II.   THE BRENNEN MEMORANDUM AND THE STATE LETTER

A.   FACTS

Almost simultaneously with federal approval of the
New York Plan, the U.S. Secretary of Labor issued on
July 19, 1973, the memorandum (Brennan Memorandum), re-
ferred to earlier, which stated that:

> "administering agencies are directed
> to inform their grantees that where
> there is a viable and effective
> hometown or imposed construction in-
> dustry plan in operation in a
> geographical area, additional
> and/or supplementary State or local
> EEO requirements may not be
> applied to Federally-assisted

25.

construction projects."   (Amended
Complaint, Exhibit C).

On June 29, 1973, the Industrial Commissioner for the

State Department of Labor issued a letter (the State

letter) which provided:

> "To insure that the State ful-
> fills its commitment to [affirmative
> action] plans ... [i]t is essential
> that only those plans that have
> been approved by either the Governor
> or this Department should be in-
> cluded in the specifications [for
> all State and State-assisted con-
> struction contracts]."(Amended
> Complaint, Exhibit D).

Subsequently, the State Department of Labor found the

Mayor's Plan unacceptable because it was not in accord

with the New York Plan.

On January 16, 1974, the U.S. Secretary of Labor,

the Assistant Secretary of Labor for Employment Standards

and the Director of the Office of Federal Contract Com-

pliance issued a regulation, 39 Fed. Reg. 2365,  which

was published in the Federal Register on January 21, 1974,

to be effective on the date of publishing.  It consti-

tuted an amendment to 41 C.F.R. §60-1.4 and, according

to its preamble was intended:

> "to clarify the extent to which
> the U.S. Department of Labor will
> deem State and local government
> equal employment opportunity re-
> quirements applicable to federally
> assisted construction contracts
> subject to the equal employment

26.

> requirements of Executive Order
> 11246, as amended, and its implement-
> ing rules, regulations, and orders,
> including Federal equal employment
> opportunity bid documents incorpo-
> rating the requirements of voluntary
> or imposed construction industry
> plans established pursuant to the
> Executive Order."  39 Fed. Reg.
> 2365 (January 21, 1974).

The regulation required any state or local government

which intended to impose affirmative action requirements

on contractors working on federally assisted construction

projects to submit the requirements to the Director of the

Office of Federal Contract Compliance for approval.  The

Director was to render a decision which could be appealed

to the Assistant Secretary of Labor for Employment

Standards.  The regulation further provided:

> "The State or local government
> affirmative action hiring and/or
> training requirements shall not be
> included in federally assisted
> construction contracts until the
> Director. or, in the case of an
> appeal, the Assistant Secretary, has
> had an opportunity to make a de-
> termination in accordance with this
> paragraph."  41 C.F.R. §60-1.4(b)
> (2), 39 Fed. Reg. 2365 (January
> 21, 1974).

Plaintiffs challenge all three regulations as in-

valid for failure to be published in accordance with

federal and state law.  They also challenge the Brennen

Memorandum as an illegal attempt to preempt local equal

employment opportunity programs.

27.

B.   MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs move for partial summary judgment enjoining the enforcement of the July 19, 1973 Brennan Memorandum and the June 29, 1973 State letter.

In the companion case, City v. Diamond, supra, we determined that the Brennan Memorandum was invalid both because it was not published in accordance with the requirements of the Administrative Procedure Act, 5 U.S.C. §§552, 553, and because it was an unauthorized attempt to preempt local equal employment opportunity efforts.  The Secretary of Labor and other federal defendants in Diamond were enjoined from terminating or withholding federal grant funds for eligible City projects where such termination or withholding occurred solely on the ground that the project was subject to the Mayor's Plan or that the Mayor's Plan exceeded the requirements of the New York Plan.  The decision in Diamond fits the shoe here and the federal defendants in this case are accordingly enjoined from enforcing the Brennan Memorandum on all federally-assisted construction projects.

Plaintiffs next argue that the State letter is invalid because it was not published as required by Article 4, §8, New York Constitution, and New York Executive Law §102.  Article 4, §8 of the State Constitution (McKinney 1969) provides:

28.

> "No rule or regulation made
> by any state department, board,
> bureau, officer, authority or com-
> mission, except such as relates to
> the organization or internal manage-
> ment of a state department, board,
> bureau, authority or commission,
> shall be effective until it is filed
> in the office of the department of
> state.  The legislature shall pro-
> vide for the speedy publication of
> such rules and regulations, by
> appropriate laws."

This requirement is implemented by Executive Law §102

(McKinney 1972) which provides for publication of all

rules and regulations in the New York Code of Rules and

Regulations (NYCRR).  The scope of these provisions has

been interpreted by the New York Court of Appeals in

People v. Cull, 10 N.Y.2d 123, 218 N.Y.S.2d 38, 176 N.E.

2d 495 (1961), in which Judge Fuld stated:

> "The term 'rule or regulation,' has
> not, it is true, been the subject of
> precise definition, but there can be
> little doubt that, as employed in the
> constitutional provision, it embraces
> any kind of legislative or quasi-
> legislative norm or procedure which
> establishes a pattern or course of
> conduct for the future.  The label
> or name employed is not important
> and, unquestionably, many so-called
> 'orders' come within the term."

The State letter establishes a procedure for future ap-

proval of affirmative action plans, and therefore falls

within the constitutional and statutory publication re-

quirements as construed in People v. Cull.    Since

29.

defendants do not contest the fact that the letter
was never published, the motion for summary judgment is
granted, and the State defendants are enjoined from
enforcing the terms of the letter without meeting the
necessary publication requirements. 8/

      C.   MOTION FOR PRELIMINARY INJUNCTION

It follows from our grant to plaintiffs of partial
summary judgment that the plaintiffs are entitled to
a preliminary injunction restraining the federal and
state defendants respectively from enforcing both the
Brennan Memorandum and the State letter as to locally-
administered, public construction sites which receive
federal or state assistance as the case may be.

      D.   FEDERAL DEFENDANTS' MOTIONS TO DISMISS

The plaintiffs move to dismiss for failure to
exhaust the remedy allegedly afforded by the January 1974
regulation.

As indicated above in detail, we held in the
companion case of City v. Diamond, supra, that the
January regulation of the Secretary of Labor was in-
validly promulgated and without legal effect.  The
provisions of the "regulation" therefore afford no admini-
strative remedy for the plaintiffs that need be exhausted
before seeking judicial relief.

30.

For the reasons set forth above, the motions to dismiss are denied except as to the New York State Department of Labor.  The motions for determination of a class and for partial summary judgment are granted.  The motion for preliminary relief is granted to the extent indicated.

It is so ordered.

Dated: New York, New York
       November 8, 1974.

_____
                    U.S.D.J.

31.

FOOTNOTES

1.  Plaintiffs' motion to consolidate this case with a re-
    lated one, City v. Diamond, 379 F.Supp. 503 (1974) is
    moot in light of our having rendered a decision in that
    case.

2.  New York City originally was a participant in the New
    York Plan, but withdrew from the Plan in January, 1973.
    Thereafter, the City promulgated its own rules and
    regulations, effective July 20, 1973.  These rules and
    regulations, together with the Mayor's Executive Order
    No. 20 of July 15, 1970, constitute the "Mayor's Plan,"
    which imposes an obligation on public contractors, indivi-
    dually rather than by trade, to make a good faith effort
    to employ one minority trainee per four journeymen.

3.  While the motions to dismiss, of course, address themselves
    to the entire complaint, those aspects which we here
    decide relate to the New York Plan.  As already noted, we
    deal later in the case with those arguments and motions
    which concern the Brennen Memorandum and the State letter.

4.  Nor does the legislative history of Title VII of the
    Civil Rights Act of 1964 contain any indication that
    Congress envisioned the jurisdiction of the Commission
    to encompass such a complaint despite the wording of
    Sections 2000e-2 and 2000e-3.  See 2 U.S. Code Congr.
    Admin. News 1566 et seq (1964).

5.  The Office has promulgated regulations intended "to
    achieve the aims of Parts I and II and IV of Executive
    Order 11246," (4 C.F.R. §60-1.1), empower the Director
    to review federal contracts "to determine if the prime
    contractor or subcontractor maintains indiscriminatory
    hiring and employment practices and is taking affirmative
    action to ensure that applicants are employed and that
    employees are placed, trained, upgraded, promoted, and
    otherwise treated without regard to race, color, religion,
    sex or national origin."  41 C.F.R. §61-1.20(a).

6.  To avoid a vacuum in which no federally-approved affirma-
    tive action plan would be in operation, plaintiffs
    suggest instatement of the requirements contained in Part
    II of the Federal Bid Conditions.

7.  See United States v. Wood, Wire and Metal Lathers, 328
    F.Supp. 429 (S.D.N.Y. 1971), aff'd 471 F.2d 408 (2d Cir.
    1973) (contempt citation for failure to abide by consent
    decree prohibiting discrimination); United States v.

i.

Enterprise Association, Local 638, 360 F.Supp. 979
(S.D.N.Y. 1973) (pattern and practice of discrimination
by steamfitters' union; discrimination by steamfitting
industry employers' association enjoined); United States
v. Enterprise Association, Local 638, 347 F. Supp. 164
(S.D.N.Y. 1972) (pattern and practice of discrimination
by ironworkers' union).

8. The grant of summary judgment against the state defend-
ants is predicated solely on the failure to publish the
State letter. Plaintiffs have not raised issues going
to the merits of the letter on this motion and we intimate
no views on that subject.

ii.

**United States District Court**

FOR THE

Southern District of New York

# OPINION

**MORRIS E. LASKER, D. J.**